Thank you, Your Honor. My name is Kim Dieter. I represent Ms. Lawson. I represented her at the trial. We've joined this case previously with Ms. Ogren's case. I am now at the Federal Defender's Office, the same group of attorneys that were representing Ms. Ogren to begin with as well, and we've joined in this appeal together. Okay. So you were CJA when you did the trial? Correct. Okay. There are a plethora of difficulties and problems with the indictment. There were from the beginning. Starting in order of importance, perhaps, is the best way to go. We've alleged that the first count of the indictment as well as the second count of the indictment were both duplicitous. Count one contained three separate conspiracies. Count two contained several different substantive offenses, not necessarily correlating with the conspiracies that were charged in count one. The indictment did not incorporate count two into count one, the substantive offenses into the conspiracy offenses in count one. Count one, at its inception, or I should say, there was a multiplicity problem. There was a superseding indictment, and it's the superseding indictment that we ended up dealing with at trial. The government initially charged a conspiracy to smuggle, a conspiracy to conceal merchandise that had been unlawfully imported, and a conspiracy to receive unlawfully imported merchandise. We made numerous objections, and the difficulties are, one, we've got duplicity and all the range of problems that come with duplicitous indictments, and they were all here, present here during this case. We would argue that there was no venue for smuggling. The venue instruction was not given to the jury over objection of both defendants. We submit that the smuggling occurred in the District of California. Was the venue challenge raised pre-trial? It was. It was raised during the jury instructions at the beginning. Pre-trial. Pre-trial. We raised those, I believe we raised those before the jury was seated, yes, pre-trial. And so, when, and then obviously later. So, are you telling me that you raised it during the trial? I can tell you that we raised it because we had to double check that we did raise it in time prior to trial. Your argument is it was timely? Yes. The second offense contained within the first count was. . . You charge a conspiracy, isn't it the law that you can, venue is proper in any district where any overt act occurred? Absolutely. The problem here, aside from the duplicity, is that under the conspiracy to conceal, there was no jurisdiction. Because there was absolutely no evidence whatsoever that there was a conspiracy or that any of the overt acts to conceal, or the conspiracy to conceal the merchandise after it was unlawfully imported, happened in the Eastern District of Washington. The government's own witness testified that he was unaware of any agreement, any conversation, any intent by the defendants to engage in a plan to import this monkey from Asia prior to them leaving the Eastern District of Washington. However, the defendants did drive to Washington, correct? Correct. And Pratt did conceal the monkey and its origin, destroyed documents, concealed them from proper authorities. And I would submit that while Pratt did lie about the origins of the monkey or where it came from, that is not a conspiracy to conceal the merchandise after it's been unlawfully imported. Didn't he also destroy documents? He did, as to the origins of the merchandise, which is a separate conspiracy, as noted in Grenwald v. United States, that conspirators that agree to hide their crime, that's not a continuation of the original conspiracy. If that were the case, a conspiracy would have a life that could go on indefinitely. And that's the problem. And the judge submitted in his order, the trial court submitted in an order denying the Rule 29 motion, that very same theory. And we would submit that's an impermissible theory upon which the jury probably came to its guilty verdict on the concealment conspiracy. And the problem with all of them, on top of this, the other issue, and I think my colleague is going to go into this in greater detail, all of the charges, all of the offenses contained within the indictment rely on the contrary to law prong. And that is that the merchandise had to be imported contrary to law. And you're saying she's going to talk about that rather than you? Yes. Okay. More in depth, yes. So there are, sorry, the plethora of issues involved in that the second count of the indictment, which contains several different counts, and I know the government argues these are all just different ways of committing the same offense. I would submit to the court that is not accurate just by looking at the plain language of the statute. It is, obviously there's case law that says paragraph one and paragraph two are separate offenses, smuggling, and then the second paragraph talks about importation. So if we don't agree with you and we find that the statute describes numerous ways of violating the statute, then the government wins? No, because they've got, they charge smuggling in the first paragraph. They charged, which is already as noted in Olay Castro and United States v. Babb, separate offenses. So that's already well-established case law. If we're talking about the second paragraph that says, that talks about the unlawful importation or the importation contrary to law, there's also, that paragraph separates into the things that happen, there's the importation, and then all the things that happen after the importation. They can't be the same way of committing the same offense. So what do we do with the way the judge put the jury verdict together? I think the judge was. Didn't the jury sufficiently suggest that your argument is insufficient because the jury said, yes, yes, yes? I think the jury was improperly instructed. Particularly, there's a jury instruction on the substantive offenses, which is jury instruction number 10. Nowhere in that instruction is the jury told that the concealment of the monkey and the transportation of the monkey have to occur after the unlawful importation. So under this instruction, the jury very well could have convicted on a theory that the defendants were transporting and concealing while importing, and that is another impermissible legal theory upon which the jury may well have based its verdict. So, no, the verdict form does not save the indictment. The verdict form also substantially amends, constructively amends, the counts that were originally charged in the indictment. Why couldn't the importing and concealment and transportation all be occurring simultaneously? According to the statute, there is the importation, and then the statute says, and it also makes illegal. But the concealment and the transportation didn't stop while they were being, while they were going through the formality of showing their papers and so forth. Correct. So why can't that all be a continuing transaction? It could be, but they're separate offenses. Different elements are required to show each one. You could have circumstances where two may be occurring at the same time. And, for instance, in the Lopez case, the en banc case that this circuit decided, with regard to importing and transporting illegal aliens, that statute sets forth that the importation, or the brings to, is a separate offense than the transporting of. And, yes, they could occur simultaneously, but they are separate offenses. And then the question of venue, when you have these separate offenses, when does one end and another begin? That's important for the conspiracy. And, again, because of the duplicity here, you can't pull all the layers of the onion apart in any meaningful way. And then the government argues in their response brief, for instance, on Count 1, that the language of to smuggle and to receive was merely a surplusage, and that the only element or the only offense that really counted in that paragraph was to conceal. So I would submit to the court, while it may be possible, I would say even in this case, because everything here relied on a contrary-to-law element, and that the jury instructions gave to the jury the ability to convict on an impermissible theory, where they could convict based on coming through customs and failing to declare. However you label what they were doing, the plan was to bring the monkey from Thailand to Spokane, right? Correct. That's what the evidence showed, yes. But when did that plan begin? And then the object of the conspiracy, once that's completed, then the conspiracy is over. The sentence in this case was 60 days? Yes. And if I may, I would like to let my colleague come forward. Okay. Good morning, Your Honors. I'm Kaylee Moran from the Federal Defender's Office, also in the Eastern District of Washington, on behalf of Ms. Ogren. I first of all wanted to answer the court's question and point to the record regarding venue. That was raised pretrial, in other words, before the trial began, in the submitted jury instructions that are in Volume 1 of the excerpt of record. When defendants did submit their proposed jury instructions, we requested specifically that the jury be instructed regarding venue. And then there were detailed discussions regarding that throughout the trial until then. I guess my worry was that it didn't seem to me that the poor old trial judge ever got a chance to determine this before we're in the middle of trial. I think that it came as a complete surprise to us that the court did not want to instruct regarding venue. So the more detailed discussions occurred during the jury instruction. Did you ever raise it to the judge at all? I have to look at the jury instructions one more time, but did you ever raise it to the court at any hearing prior to trial? Your Honor, I would have to say that I was second counsel on the case of Ms. Ogren. The answer is no, isn't it? The answer is no. The answer is no, isn't it? I believe that the answer would be no other than in the written filings. I don't know that it was necessarily discussed in the oral motions. I also wanted quickly to address the concealment of the monkey. Mr. Pratt testified that when he was questioned by the agents regarding the monkey, he specifically said he was caught off guard and said that the monkey was from California. That just by itself would mean that he was not part of any conspiracy to conceal the crime at that point. The other defendants had no way of knowing that he had made that statement. So I think that that's an important distinction as well, that his statement goes more towards concealment of the crime and not concealment of the merchandise because, in fact, he admitted he had a monkey. Are you suggesting he never took the monkey and concealed the monkey? They did not conceal the monkey once it was in the United States because – I thought he did take it away from the place where it was for a couple of times. If I recall the testimony specifically of the agents, Mr. Pratt asked them if he wanted the monkey, if he wanted him to bring the monkey to him, and the agent said no at that time. I believe there was some testimony regarding destruction of documents  but the actual merchandise itself was never concealed. In other words, the monkey was never concealed. I thought there was something in there that he took it to some place, but I'll have to look at the record. There very well may be, but nevertheless, I think – I'm not going to argue with you on that. Right. So I think the other things that we wanted to address specifically are the contrary to law element because I think that that is another place where this case has some severe problems. You have two – You're really looking at – you probably say this better than me because I'm just from Idaho. Al-Ghazouli. Al-Ghazouli? Yes. We've struggled to say that. I think it's Al – I would say Al-Ghazouli. Whatever. I hope I'm close. But in that case, I think the court was very clear in 2008 that regulations – in order for regulations to be contrary to law, they must have a criminal penalty associated with them. But in that case, didn't they say that the provisions of the CAA specifically provided for criminal enforcement and therefore they qualified? That's correct. That was the holding of that case. Isn't it also true that the ESA makes it unlawful to trade in any specimen contrary to the provisions of the treaty? That is true. And isn't trade, import, introduce, export, re-export, isn't that what trade means? Yes, Your Honor. Then, if there are criminal penalties in the ESA for violation of any regulation issued in order to implement the ESA, then it seems to me that Al-Ghazouli says we're there. That may be true if not for the merger problem that appears specifically in Count 2. The government can charge whatever it wants. That's correct. But the way the government did charge it in this case is they included both the Endangered Species Act and civil penalties regarding failure to declare the monkey to any official of the United States upon its entry into the United States. Well, it shows the government did charge under 545, didn't they? They did. But I think the problem is when you have the contrary to law element there, that included in this case both the way it was charged and the way it was proved to the jury, the way it was instructed to the jury, and, in fact, in the jury instruction itself, it included civil declarations. And so you have two things there. You have both the Endangered Species Act and you have the customs violations. And the government presented evidence regarding the customs violations, and, in fact, the jury was instructed regarding the customs violations. If the court were to look at jury instruction 8 in particular, that is very telling of why the Al-Ghuzi case does show that there's a problem here, because that instruction, first of all, it burden shifts, because it says here's the lawful ways to import a monkey, and so unless these were complied with, it was unlawful to import the monkey this way. So there's instruction 8? And I believe it's page 54 of Volume 1. And then, secondly, that instruction also collapses all these various theories that the government put forward, which included both the Endangered Species Act, the Lacey Act, which, in fact, isn't triggered with importation at all, and then it also included these customs violations. The government additionally introduced into evidence the customs forms specifically and presented evidence regarding the fact that there was a failure to declare this monkey. The reason that that's important and the reason that that creates a due process violation here and a merger problem is because you're taking a civil regulation and you're making that a criminal penalty. Basically, they're creating a pyramid structure wherein they're taking a civil regulation, among other regulations that were criminal in nature, but there's also that civil regulation that's in there, and using that civil regulation, the government has charged a felony with a 20-year maximum penalty. In Al-Ghazi, they talk about the fact that the amended statute from the Patriot Act from, I believe it's 18 U.S.C. 554, includes the language law or regulation. So clearly, there is a distinction here, and that distinction under 545 is that the law must be a criminal penalty and a criminal sanction. The jury was specifically instructed that they could rely upon the customs declaration by itself as a reason that the law was violated in this case, and that makes this an unconstitutional verdict. Could your clients have been charged with perjury? I'm sorry? Could your client have been charged with perjury? My client never testified. Could they have been charged with making a false statement? Oh, as far as with the form itself? Yes. You know, I don't know right offhand if there's a separate penalty that would be attached to that. I would have to look into that. I don't have the research on that. I know that the CFR itself does not punish the failure to declare the item. So for these reasons, we would ask the court to reverse this conviction. I think the myriad of problems that occurred in this case, and it began with a faulty indictment, and then you had basically impermissible legal theories were relied upon, and I've talked about those with regards to the contrary to law, and furthermore with the burden shifting of jury instruction, specifically jury instruction number eight. You also had a fatal amendment of the indictment by the way the district court instructed the jury. Specifically, the district court instructed the jury in such a way that they changed the language. Count one was an importation or was smuggling rather than importation, and then there were a myriad of other problems as well. I see that my time is up. Thank you. Thank you. Appreciate you. Thank you for your argument. Thank you for being here. In cases 0-9.
judges: Goodwin, Hawkins, Smith N. R.